IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RASHID AL-QADIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-0357 |
| | ) | Judge Trauger |
| G4S SECURE SOLUTIONS | ) | |
| (USA), INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM

Pending before the court is the Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 52), to which the plaintiff has responded (Docket No. 58), and the defendant has filed a reply (Docket No. 64). For the reasons discussed herein, the defendant's motion will be denied.

# BACKGROUND

This civil rights action brought pursuant to 42 U.S.C. § 1983 arises from the alleged deprivation of the plaintiff's First Amendment right to freely exercise his religion. The plaintiff, Rashid Al-Qadir, is a long-time adherent of Islam.[1] He alleges that his religion requires him to

---

[1] Unless otherwise noted, the factual allegations are drawn from the plaintiff's Amended Complaint (Docket No. 41).

wear a kufi, which is a thin white skullcap worn by Muslims worldwide. He wears his kufi at all times and has allegedly entered many public buildings without incident.[2]

The defendant, G4S Secure Solutions (USA), Inc. ("G4S"), formerly The Wackenhut Corporation ("Wackenhut"), is a private company that provides security services to a number of clients, including governmental entities. G4S has provided and continues to provide security services for the Metropolitan Government of Davidson County ("Metro") at the Davidson County Juvenile Justice Center (the "Juvenile Justice Center"). The Amended Complaint alleges that, pursuant to its delegation of authority from Metro to ensure the safety and security of the Juvenile Justice Center, G4S established a policy regarding the proper attire of individuals entering the building. Though a private, for-profit corporation, G4S, including its employees and agents, is alleged to be a state actor for purposes of Section 1983, because it performs services that have traditionally been within the exclusive province of the state.

On April 11, 2011, the plaintiff arrived at the Juvenile Justice Center to attend a proceeding in a Juvenile Court case in which he was a party. He entered the main entrance of the Juvenile Justice Center dressed in religious attire, which included the aforementioned kufi. At the main entrance, the plaintiff approached a security checkpoint, which was staffed by several G4S security officers wearing uniforms bearing a "Wackenhut" label. The plaintiff then proceeded to remove metallic items from his pockets and passed through the metal detector operated by the G4S personnel.

---

[2] For instance, the plaintiff alleges that, on April 13, 2011, he entered the Estes Kefauver Federal Building and United States Courthouse to file his *pro se* Complaint commencing this action against G4S. According to the plaintiff, he wore his kufi that day without incident.

After passing through the metal detector, the plaintiff was confronted by a G4S security officer and ordered to remove his kufi. The plaintiff responded that his kufi was part of his religious attire, but he nonetheless offered to remove the kufi temporarily so that the G4S security officers could search it for any contraband. He added, however, that he would not remove the kufi altogether because of its religious significance. In response, one of G4S' security officers, an Officer Frierson, told the plaintiff that he had to remove his kufi entirely or else he would be removed from the Juvenile Justice Center. Officer Frierson added that he was not interested in discussing religious politics with the plaintiff. Officer Frierson was also apparently unswayed by the plaintiff's attempts to reexplain the religious significance of his kufi and assert his First Amendment rights, allegedly remarking that he "did not care about that." The plaintiff was then ordered by G4S security officers to leave the Juvenile Justice Center. The plaintiff alleges that he voluntarily left the building, because he sensed that he was facing a threat of potential violence and/or arrest from the G4S personnel. As a result of this incident, the plaintiff was unable to attend the proceeding scheduled in his Juvenile Court case.

The plaintiff, initially proceeding *pro se*, commenced this action on April 13, 2011. (Docket No. 1.) He alleges that the conduct of G4S' security guards violated his First Amendment right to freely exercise his religion. (Docket No. 41 at 5.) The plaintiff later retained private counsel, Mr. Andrew Love, who filed a Notice of Appearance on June 19, 2012. (Docket No. 37.) An Amended Complaint was filed thereafter on June 28, 2012. (Docket No. 41.) On August 13, 2012, the Court issued a Memorandum and Order accepting the Magistrate Judge's May 31, 2012 Report and Recommendation, recommending the denial of G4S' then-pending

motion to dismiss the plaintiff's original *pro se* Complaint.[3] (Docket No. 48.) G4S filed the present motion on August 27, 2012. (Docket No. 52.)

## ANALYSIS

The defendant has moved for dismissal of the plaintiff's Amended Complaint on the ground that it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.  Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the

---

[3] Specifically, the court accepted the Magistrate Judge's May 31, 2012 Report and Recommendation for the modified reason that G4S's then-pending motion to dismiss was mooted by the June 28, 2012 filing of the Amended Complaint. (*See* Docket No. 48 at 2-3.)

"facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## II. The Defendant's Motion

G4S argues that dismissal of the Amended Complaint pursuant to Rule 12(b)(6) is appropriate, because the plaintiff has failed to allege sufficient facts to demonstrate that it is a state actor for purposes of 42 U.S.C. § 1983. (Docket No. 52-1 at 4.) Specifically, G4S contends that the Amended Complaint fails to allege facts demonstrating that it acted under color of state law under either one of the applicable tests developed by the Supreme Court to determine whether state action exists in a particular case. (Docket No. 52-1 at 4.) In his opposition brief, the plaintiff asserts that he has sufficiently alleged that G4S is a state actor under two of the applicable tests: the public function test and the nexus test. (Docket No. 59 at 3-6.)

By its express terms, Section 1983 only permits actions against those who, acting under color of state law, deprive another person of a right secured by the Constitution or federal law. 42 U.S.C. § 1983; *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005). A private actor can be held liable under Section 1983 when its action is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (*en banc*) (citing *Wolotsky v. Huhn*, 960 F.2d

1331, 1335 (6th Cir. 1992). All of these tests are vehicles through which courts perform the "necessarily fact-bound inquiry" to resolve state-action questions. *Lugar*, 457 U.S. at 939; *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 298 (2001). To proceed with his Section 1983 claim, the plaintiff need only show state action under one of the aforementioned tests. *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007).

Under the public function test, state action exists when a private entity exercises "'powers traditionally exclusively reserved to the State.'" *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 828 (6th Cir. 2007) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). To support its contention that the plaintiff cannot sufficiently allege state action under this test, G4S relies primarily on the Sixth Circuit's *Romanski* decision and the Seventh's Circuit's decision in *Wade v. Byles*. In *Romanski*, the Sixth Circuit held that, "[w]here private security guards are endowed by law with plenary police powers such that they are *de facto* police officers, they may qualify as state actors under the public function test." 428 F.3d at 637. Moreover, in *Wade*, the Seventh Circuit held that a private security guard performing duties at a building owned by the Chicago Housing authority was not a state actor under the public function test, because "he possessed powers no greater than those of armed security guards who are commonly employed to protect private property." 83 F.3d 902, 906 (7th Cir. 1996). Thus, G4S emphasizes that the plaintiff's failure to allege whether the security officers at the Juvenile Justice Center possessed exclusive police powers or powers greater than other security guards is fatal to his claim. (*See* Docket No. 52-1 at 7-8.)

The plaintiff responds that *Romanski* is distinguishable because it involved the conduct of

6

private security guards operating on private property, whereas here, G4S was delegated authority by the state to provide safety and security at a public courthouse. (Docket No. 59 at 4-5). In support of his argument that G4S was endowed with powers that are traditionally exclusively reserved to the state - namely, providing safety and security at the Juvenile Justice Center - he cites Tenn. Code Ann. § 5-7-108, which is captioned "Courthouses." That provision reads in relevant part that "[t]he sheriff has charge of the courthouse, unless some other person is specially appointed by the county legislative body for that purpose, and shall prevent trespasses, exclude intruders, and keep it and the grounds attached thereto in order." Tenn. Code Ann. § 5-7-108(a)(1) (2011).

Having reviewed the allegations of the Amended Complaint, the court believes that the plaintiff has sufficiently alleged state action under the public function test. In his Amended Complaint, the plaintiff alleges that Metro delegated its authority to provide safety and security at the Juvenile Justice Center to G4S and that, pursuant to this authority, G4S established a dress policy and operated the security checkpoint at the main entrance to the courthouse. (Docket No. 41 at 2-3.) As a general matter, the Tennessee Code provides that the sheriff, or some other specially appointed person, is charged with protecting county courthouses. *See* Tenn. Code Ann. § 5-7-108(a)(1). Moreover, in Davidson County, trial judges are obligated to appoint court officers for the respective courts to serve under their direction and supervision. *See* Tenn. Code. Ann. § 8-8-201(a)(2)(B)(i) (2011). The duties of such officers include maintaining order during sessions of the court, serving process as ordered, and performing other duties prescribed by the

judge.[4] Tenn. Code Ann. § 8-8-201(a)(2)(B)(ii) (2011). These statutes expressly and exclusively place the obligation to protect county courthouses upon the state. In the instant case, the plaintiff has alleged that the state (Metro) delegated that duty to G4S, and that the defendant accepted this delegation by providing security and safety services at the Juvenile Justice Center. Thus, construing the factual allegations of the Amended Complaint in the light most favorable to the plaintiff, it is reasonable to infer that G4S was performing an exclusive state function when it denied the plaintiff access to the Juvenile Justice Center on April 11, 2011, unless he removed his kufi and kept it off while in the courthouse. *See West v. Atkins*, 487 U.S. 42, 56 (1988) (concluding that a private physician employed by the state was a state actor, because the state was obligated under the Eighth Amendment and state law to provide adequate medical care to its prison inmates, the state delegated that duty to the physician, and the physician voluntarily accepted that obligation by contract).

Citing *Wade*, G4S asserts that the mere presence of a private security guard performing security services inside a state building does not constitute state action. (Docket No. 52-1 at 8.) *Wade*, however, is distinguishable, because unlike that case, the state here possesses an

---

[4] This statute further notes that court officers "shall, while acting in the performance of their duties, possess and exercise police powers to the same extent as that granted to members of the metropolitan police department." Tenn. Code Ann. § 8-8-201(a)(2)(B)(ii) (2011). Construing the factual allegations of the Amended Complaint in the light most favorable to the plaintiff, the court will assume, at this stage of the proceedings, that when the plaintiff alleges that G4S was delegated authority from Metro to perform security and safety services at the Juvenile Justice Center, it was granted the full extent of the powers held by those officers charged by statute with protecting the state's courthouses, including the police power. It would thus appear that G4S was a state actor under *Romanski*. Of course, the court acknowledges that discovery may reveal that G4S' powers were, in fact, far more circumscribed.

affirmative statutory obligation to protect the state building at issue - namely, a county courthouse. Indeed, the Seventh Circuit noted in *Wade* that the Chicago Housing Authority "had no statutory obligation to provide security services for its residents." 83 F.3d 902, 906 n.7.

However, even assuming that the allegations of the Amended Complaint fail to sufficiently allege that G4S is a state actor under the public function test, the plaintiff has nonetheless sufficiently alleged state action under the nexus test. Under this test, the plaintiff "must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834. In his opposition brief, the plaintiff directs the court's attention to an April 21, 2011 facsimile sent by Davidson County Juvenile Court Judge Betty Adams Green to the undersigned. (Docket No. 8.) The facsimile encloses an April 20, 2011 memorandum from William M. Kostrub, the Director of Security for Metro, to Judge Green concerning security procedures at the Juvenile Justice Center. (*Id.* at 2.) The memorandum states:

> I have directed my security staff, both the Juvenile Court Warrant Division and our security contractor, G4S/Wackenhut, to adhere to the prescribed policy in the event that a male enters the Juvenile Justice Center wearing any type of headwear. The person in question will be respectfully requested to remove the headwear for security screening. Once cleared through security, if the headwear can be reasonably ascertained to be of a religious nature, the male will be permitted to replace the headwear and continue with court business. If there is any question as to the nature of the headwear, maximum accommodation is to be afforded.

(*Id.*)  On April 27, 2011, the court issued an Order directing the Clerk to file this facsimile, noting that it was received in the undersigned's chambers from Judge Green on April 21, 2011, and that it confirms the revised security procedures at the Juvenile Court (Docket No. 7.).[5]

Viewing the contents of this memorandum in the light most favorable to the plaintiff, the court is satisfied that he has set forth a sufficiently close nexus between the state and G4S' challenged conduct - namely, its application of a dress policy that resulted in the alleged deprivation of the plaintiff's First Amendment rights.  Indeed, the memorandum states that G4S is a part of Metro's security staff at the Juvenile Justice Center.  Thus, serving in this capacity, G4S' conduct toward the plaintiff can be fairly attributed to Metro itself.  *Chapman*, 319 F.3d at 834.[6]

---

[5] Because this facsimile is an item appearing in the record of this case, the court may consider it in the course of ruling upon the present motion. *See Gardner v. United States*, 443 F.App'x 70, 73 (6th Cir. 2011) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account") (internal quotation marks and citations omitted). Moreover, the court finds G4S' suggestion that this document lacks authenticity to be unpersuasive. (Docket No. 64 at 6, n. 4.) The facsimile has been readily authenticated, as evidenced by the court's April 27, 2011 Order identifying the circumstances surrounding the document's receipt in chambers on April 21, 2011. The court adds that this facsimile was received following a telephone call placed by the undersigned to Judge Green to inquire into the security procedures at the Juvenile Justice Center in connection with the plaintiff's pro se "Emergency Motion to Enter Juvenile Court Building on April 25, 2011" (Docket No. 3), as detailed in the court's Order of April 27, 2011 (Docket No. 5).

[6] The court also notes that the memorandum raises unanswered questions concerning Metro's role in promulgating the dress policy that allegedly interfered with the plaintiff's First Amendment rights. While the Amended Complaint alleges that G4S established the alleged dress policy, the contents of this memorandum raise the possibility that Metro also may have played a significant role in the policymaking process. The court expects that discovery will shed further light on what role, if any, Metro played in promulgating this specific dress policy.

Accordingly, for all of the aforementioned reasons, the court will deny the defendant's motion to dismiss the Amended Complaint.

## **CONCLUSION**

For all of the reasons discussed herein, the Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 52) will be **DENIED**.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge